UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X NEW

YORK DIAGNOSTIC MEDICAL CARE P.C.,

Case No.: 1:14-cv-05498-SJ-RER

Plaintiff,

-against-

GEICO CASUALTY INSURANCE CO.,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND FOR SANCTIONS**

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Defendant GEICO Casualty Co.*

Of Counsel:

Barry I. Levy (BL 2190)
Max Gershenoff (MG 4648)
Michael Schnepper (MS 6953)
Joshua D. Smith (JS 3989)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................iii

PRELIMINARY STATEMENT .....................................................................1

STATEMENT OF FACTS ..............................................................................3

      I.     Facts Relevant to This Motion to the Extent That it is Predicated on Rule 12(b)(1) ..........................................................................................3

          A.     Olmedo's Purported Purchase of NY Dx...........................................3

          B.     The Purported Sale of NY Dx's Accounts Receivable to Alta Enterprises, Inc., and the Purported Retainer and Irrevocable Directives to Weinberg ....................................................................3

          C.     Olmedo's Death ...............................................................................4

          D.     Weinberg's Litigation Activity and professional Disciplinary History............................................................................................4

      II.    Facts Relevant to This Motion to the Extent That it is Predicated on Rule 12(b)(6) ..........................................................................................8

          A.     NY Dx's Previous Supreme Court, New York County Action ........8

          B.     The Present Case...............................................................................8

          C.     The Related Case and NY Dx's Default in the Related Case...........9

          D.     The Settlement and Release Agreement With Olmedo's Estate and NY Dx ......................................................................................11

ARGUMENT ...............................................................................................12

      I.     The Standards on This Motion......................................................................12

          A.     The Standards on a Motion Pursuant to Rule 12(b)(1).....................12

          B.     The Standards on a Motion Pursuant to Rule 12(b)(6).....................12

      II.    NY Dx lacks Standing to Prosecute This Action...........................................13

III.  NY Dx's Claims in This Action Should be Dismissed Pursuant to the
      Settlement and Release Agreement Between GEICO and NY Dx ............... 15

IV.   NY Dx's Claims in this Action are Barred by Res Judicata ......................... 17

V.    The Court Should Impose Sanctions on Weinberg Pursuant to 28 U.S.C.
      § 1927 and its Inherent Power ...................................................................... 19

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

In re 60 E. 80th St. Equities, Inc.,
 218 F.3d 109 (2d Cir. 2000).......................................................................................19

Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,
 436 F.3d 82 (2d Cir. 2006)..........................................................................................12

Arizona v. California,
 530 U.S. 392 (2000).....................................................................................................13

Bowler v. U.S. Immigration & Naturalization Serv.,
 901 F. Supp. 597 (S.D.N.Y. 1995) ............................................................................19

Chepilko v. City of New York,
 2012 U.S. Dist. LEXIS 94636 ....................................................................................16

Eastern Star Acupuncture, P.C. v Allstate Ins. Co.,
 36 Misc. 3d 41 (A.T. 2d Dep't 2012) ........................................................................15

Government Employees Insurance Co. et al. v. New York Diagnostic Medical
 Care P.C. et al.,
 E.D.N.Y. Docket No. 14-cv-5473 (SJ)(RER).........................................9, 10, 11, 16

Hamm v. U.S.,
 483 F.3d 135 (2d Cir. 2007)........................................................................................12

Hines v. Overstock.com, Inc.,
 2013 U.S. Dist. LEXIS 117141 (E.D.N.Y. 2013).......................................................3

In re Hunter,
 4 N.Y.3d 260 (N.Y. 2005) ..........................................................................................17

Margo v. Weiss,
 213 F.3d 55 (2d Cir. 2000)..........................................................................................19

Monahan v. N.Y.C. Dep't of Corr.,
 214 F.3d. 275 (2d Cir. 2000)..................................................................................12, 13

Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,
 701 F. Supp. 2d 568 (S.D.N.Y. 2010)........................................................................12

New York Diagnostic Medical Care, P.C. v. GEICO Casualty Insurance Co.,
 Index No. 650766/2013 (Sup. Ct. N.Y. Cty.) ...............................8, 9, 17, 18, 19, 20

O'Brien v. Syracuse,
    54 N.Y.2d 353 (N.Y. 1981) ........................................................................17

Ocean Diagnostic Imaging, P.C. v Chubb Indem. Ins. Co.,
    36 Misc. 3d 140(A) (A.T. 2d Dep't 2012) .............................................14

Ocean Diagnostic Imaging, P.C. v. Merchants Mut. Ins. Co.,
    15 Misc. 3d 9 (A.T. 2d Dep't 2007) ........................................13, 14, 15

Ocean Diagnostic Imaging, P.C. v. Progressive Cas. Ins. Co.,
    14 Misc. 3d 136(A) (A.T. 2d Dep't 2007) .............................................15

Park Health Ctr. v. Country-Wide Ins. Co.,
    2 Misc. 3d 737 (Civ. Ct. Queens Cty. 2003)....................................6, 21

Parklane Hosiery Co., Inc. v. Shore,
    439 U.S. 322 (1979).................................................................................13

Perez v. Danbury Hospital,
    347 F.3d 419 (2d Cir. 2003)..............................................................17, 18

Rubio v. City of New York,
    2005 U.S. Dist. LEXIS 40163 (E.D.N.Y. 2005).....................................19

Thompson v. Cnty. of Franklin,
    15 F.3d 245 (2d Cir. 1994)......................................................................13

Tromp v. City of New York,
    465 F. App'x 50 (2d Cir. 2012) ..............................................................16

Matter of Weinberg,
    25 A.D.3d 157 (2d Dep't 2005) ............................................................5, 6

Whitenack v. Armor Med.,
    2014 U.S. Dist. LEXIS 154028 (E.D.N.Y. 2014)....................................3

N.Y. C.P.L.R. 3211(a)(7)...............................................................................8, 9

## PRELIMINARY STATEMENT

Defendant GEICO Casualty Co. ("GEICO" or "Defendant"), improperly sued herein as "GEICO Casualty Insurance Co.", respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss Plaintiff New York Diagnostic Medical Care P.C.'s ("NY Dx" or "Plaintiff") Complaint in its entirety.

As discussed below, the putative owner of NY Dx, a physician named Carmen Olmedo, M.D. ("Olmedo"), died in April 2010. Olmedo's death divested NY Dx of standing to pursue collection of any of its pending billing, at least until someone with authority over Olmedo's estate – such as her executor – authorized it to do so.

Remarkably, the present action was filed despite the fact that no one with authority over Olmedo's estate ever authorized an attorney on behalf of NY Dx to pursue collection on its billing in general or, in particular, to commence any lawsuit. In fact, NY Dx and the Administrator of Olmedo's estate – her son Christen Olmedo – have entered into a Settlement and Release Agreement whereby they have released each and every one of the claims asserted against GEICO in this case. What is more, pursuant to the Settlement and Release Agreement, NY Dx and Christen Olmedo have stipulated to the entry of an Order and Permanent Injunction specifying that: (i) until recently Christen Olmedo, as Administrator of Olmedo's estate, was completely unaware that Olmedo was listed as the owner of NY Dx; (ii) Christen Olmedo never authorized Amos Weinberg, Esq. ("Weinberg"), who is purporting to represent NY Dx in this action, to represent NY Dx in this action or in any of the other lawsuits that Weinberg has filed on behalf of NY Dx; and (iii) NY Dx has no right to receive payment for any bills submitted to GEICO – including the bills that are the subject of this action – because, among other things, it

was fraudulently incorporated, secretly and unlawfully owned and controlled by non-physicians, and illegally split fees with non-physicians.

Furthermore, even if this action was not barred by Olmedo's death, or the claims barred by NY Dx's illegal corporate structure, or by the Settlement and Release Agreement, they would be barred by res judicata. In particular, the claims NY Dx asserts against GEICO in the present case are – for the most part – the exact same claims that it previously asserted against GEICO in an action in the Supreme Court of the State of New York, New York County where they were dismissed. What is more, to the limited extent that the claims asserted by NY Dx in the present case do not overlap with the claims it asserted in the Supreme Court action, the claims could have been asserted in the Supreme Court action.

As discussed more fully herein, this action is the latest in a series of lawsuits against GEICO that Weinberg has purported to file and litigate on behalf of NY Dx since Olmedo's death. Weinberg filed these lawsuits with the actual knowledge that he lacked the authority to represent NY Dx, and with the actual knowledge that NY Dx lacked standing to assert the claims he has purported to assert on its behalf. Furthermore, Weinberg has filed this lawsuit with the actual knowledge that the claims he purports to assert on NY Dx's behalf are barred by res judicata. Given the facts described below, it is difficult to view Weinberg's conduct as anything other than an unreasonable and vexatious attempt to multiply proceedings against GEICO to extract some sort of nuisance settlement. Accordingly, GEICO respectfully requests that the Court not only dismiss NY Dx's Complaint in its entirety, but also impose sanctions on Weinberg pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

## I.  Facts Relevant to This Motion to the Extent That it is Predicated on Rule 12(b)(1)

### A.  Olmedo's Purported Purchase of NY Dx

On December 31, 2009, pursuant to a putative Stock Purchase Agreement, Olmedo purported to purchase NY Dx from its supposed former owner, a physician named Eleanor Lipovsky, M.D. ("Lipovsky"). <u>See</u> Declaration of Max Gershenoff ("Gershenoff Decl."), Exhibit "A".

### B.  The Purported Sale of NY Dx's Accounts Receivable to Alta Enterprises, Inc., and the Purported Retainer and Irrevocable Directives to Weinberg

Thereafter, on March 1, 2010, Olmedo and NY Dx entered into a purported "Agreement of Sale" with an entity called Alta Enterprises, Inc. ("Alta"), whereby Alta purported to purchase NY Dx's accounts receivable. <u>See</u> Gershenoff Decl., Exhibit "B". Furthermore, on or about March 1, 2010, Olmedo and NY Dx purported to enter into an irrevocable "Retainer Agreement" with Weinberg. <u>Id</u>.

Pursuant to the "Retainer Agreement" and the "Agreement of Sale":

(i)      NY Dx and Olmedo purported to retain Weinberg to pursue collection of the NY Dx accounts receivable, despite the fact that – concomitantly – they had purported to sell and assign all of the NY Dx accounts receivable to Alta.

(ii)     NY Dx and Olmedo purported to "irrevocably direct" Weinberg to deposit any money he managed to collect on the NY Dx accounts receivable into Weinberg's

---

[1] To the extent that this motion is predicated on Rule 12(b)(6), the facts set forth herein are derived from the Complaint in this case, "any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint 'relies heavily' and which are, thus, rendered 'integral' to the complaint." <u>Whitenack v. Armor Med.</u>, 2014 U.S. Dist. LEXIS 154028 at * 11 (E.D.N.Y. 2014). However, to the extent that this motion is predicated on Rule 12(b)(1), the Court can rely on other evidence, including evidence outside of the pleadings. <u>See</u>, <u>e.g.</u>, <u>Hines v. Overstock.com, Inc.</u>, 2013 U.S. Dist. LEXIS 117141 at * 4 - * 5 (E.D.N.Y. 2013)(Johnson, J.).

Trust IOLA account, and then to disburse the funds either to Alta, or to Alta's designee.

(iii)    NY Dx and Olmedo represented and warranted that, in the event that any insurance company made payment on the NY Dx accounts receivable directly to NY Dx or Olmedo, rather than to Weinberg, then the payments would be withdrawn from the NY Dx account and paid over to Weinberg.

(iv)    NY Dx and Olmedo represented and warranted that they would "cooperate with Amos Weinberg [sic] collection efforts throughout such process and execute, without charge, any and all such documents as may be reasonably required in the opinion of Amos Weinberg to be executed and to appear for such depositions or such court appearances requested by Amos Weinberg." However, the "Agreement of Sale" also provided that "[a]ll reasonable efforts will be made by Amos Weinberg to eliminate such personal appearances whenever possible."

(v)    In the event that NY Dx and Olmedo failed to "cooperate fully with Amos Weinberg and or [Alta]", then they would be jointly and severally liable to Alta for its "losses", including attorneys' fees.

<u>See</u> Gershenoff Decl., Exhibit "B".

**C.**    **Olmedo's Death**

Soon thereafter, on April 27, 2010, Olmedo died. <u>See</u> Gershenoff Decl., Exhibit "C".

Then, Olmedo's son, Christen Olmedo, was appointed the Administrator of Olmedo's estate. <u>See</u> Gershenoff Decl., Exhibit "D". Christen Olmedo was not aware until recently that Olmedo was the nominal owner of NY Dx, nor did Christen Olmedo – as Administrator of Olmedo's estate – ever retain Weinberg or authorize Weinberg or any other law firms to commence or prosecute collections lawsuits or arbitrations in the name of NY Dx. <u>Id</u>.

**D.**    **Weinberg's Litigation Activity and Professional Disciplinary History**

Even so, in the years since Olmedo's death, Weinberg has filed and litigated multiple collections lawsuits, purportedly on behalf of NY Dx, despite the fact that he had no authority to do so following Olmedo's death. <u>See</u> Gershenoff Decl., Exhibit "E".

Weinberg had to know that he had no authority to commence or prosecute collections lawsuits on behalf of NY Dx, because Olmedo was NY Dx's sole owner of record, she was dead, and Weinberg therefore had no interlocutor at NY Dx who could authorize him to commence or prosecute collections lawsuits. <u>See</u> Gershenoff Decl., Exhibit "C".

What is more, even if there was some person at NY Dx who told Weinberg to continue pursuing collection of NY Dx's pending billing following Olmedo's death, Weinberg – an attorney – would have known that Olmedo's death divested NY Dx of the ability to pursue collection of the billing until someone with authority over Olmedo's estate, such as Christen Olmedo, the Administrator, authorized it to do so. As set forth above, Christen Olmedo never retained Weinberg or authorized Weinberg or any other law firms to commence or prosecute collections lawsuits or arbitrations in the name of NY Dx. <u>See</u> Gershenoff Decl., Exhibit "D".

Weinberg's conduct in the present case should be viewed in the context of his long professional disciplinary history. For instance, on April 18, 1997, the Grievance Committee for the Tenth Judicial District (the "Grievance Committee") issued a letter of caution to Weinberg for failing to provide one of his clients with the written retainer required by all attorneys retained in a contingent fee matter and for settling a collection matter without the permission of his client. <u>See</u> <u>Matter of Weinberg</u>, 25 A.D.3d 157 (2d Dep't 2005). The Grievance Committee noted that only the relatively low dollar amount of the settlement avoided the issuance of a more severe sanction. <u>Id</u>.

On June 20, 1997, the Grievance Committee issued a second letter of caution to Weinberg for failing to provide his client with a retainer agreement as required in a contingent fee arrangement. <u>See</u> <u>Weinberg</u>, <u>supra</u>.

On June 30, 2000, the Grievance Committee issued yet another letter of caution to Weinberg, this time for communicating with a represented party despite clear instructions to cease such communication, in violation of Code of Professional Responsibility DR 7-104(a)(1) (22 NYCRR 1200.35(a)(1)). See Weinberg, supra.

On September 18, 2001, the Grievance Committee issued a letter of admonishment to Weinberg, based on his failure to advise a putative debtor that there was no valid debt and, therefore, no merit to certain litigation Weinberg had threatened. See Weinberg, supra.

Then, in a decision and order dated October 31, 2005, the Appellate Division, Second Department suspended Weinberg's license to practice law for one year. See Weinberg, supra. The Appellate Division's decision was based on its determination that Weinberg had:

    (i)      neglected various legal matters entrusted to him, in violation of Code of Professional Responsibility DR 6-101(a)(3) (22 NYCRR 1200.30(a)(3));

    (ii)     engaged in conduct adversely reflecting on his fitness as a lawyer by – among other things – permitting one of his employees, who was not licensed as an attorney, to hold herself out as an attorney during the course of her employment with him; and

    (iii)    failed to properly preserve funds entrusted to him in escrow, in violation of Code of Professional Responsibility DR 9-102 (a)(22 NYCRR 1200.469a)).

See Weinberg, supra.

Weinberg's conduct in the present case also should be viewed in the context of his history of purporting to represent physicians without authority to do so. For instance, in Park Health Ctr. v. Country-Wide Ins. Co., 2 Misc. 3d 737 (Civ. Ct. Queens Cty. 2003), Weinberg purported to commence a no-fault insurance collections action on behalf of eight plaintiff healthcare providers. The insurer then presented evidence that various of the providers – including one who, like Olmedo in the present case, was deceased – never authorized Weinberg to represent them. Id., 2 Misc. 3d at 738-741. In its order sanctioning Weinberg, the Court

observed that:

> the court first addresses the improprieties of the officer of the court and his sordid conduct leading to months of hearings and motions. It is this relationship that lays at the heart of Mr. Weinberg's sanctionable conduct. He abdicated his responsibility as an officer of the court, and in so doing permitted a number of meritless and baseless actions to go forward, forcing both defendant and the court to expend enormous energy, time and resources. He admitted that he never signed any of the documents that came before the court bearing his signature, including verifications and affirmations. … Weinberg abdicated his responsibility … by never confirming any of the "facts" or "clients." He never once spoke with his "clients" to verify the claim or the very existence of either the clients or the claim.
>
> This failure to adequately represent his "clients" is made clear by the evidence that Mr. Weinberg was unaware that his "client" Dr. Koven was deceased. While it is still questionable whether Dr. Koven ever retained Mr. Weinberg independently or through Dr. Abraham, the fact that Dr. Koven's bankruptcy and subsequent death went undetected by Mr. Weinberg for a significant period of time indicates his dereliction of legal duty. Further, after the initial conference before this court when the truth about the deceased Dr. Koven was "discovered," Mr. Weinberg nevertheless entered judgment on Dr. Koven's behalf in another matter.
>
> Had Mr. Weinberg or his employees taken the time to review the documents or interview the purported clients at the inception of the action or at any time during the next five years, the enormous effort of both defendant and the court would not have been expended. Instead, defendant was forced to locate and investigate the "plaintiffs" in this matter and through such labor discovered two plaintiffs had never heard of Mr. Weinberg and did not authorize him to represent them in this matter. None of the underlying documents supported any cause of action on behalf of Park Health and a simple review of the documents furnished would have eliminated that plaintiff without extensive discovery and motion practice undertaken by defendant.
>
> When given the opportunity to come before this court to explain the apparent lack of merit and inconsistencies exposed by defendant, Mr. Weinberg flouted the authority of the court by failing to appear. Instead, Mr. Weinberg only appeared before the court once a contempt order was issued against him. … Upon appearing in court, Mr. Weinberg failed to present even a scintilla of evidence to prove his authority to act on behalf of the "plaintiffs." Mr. Weinberg did not produce even one document in admissible form, nor introduce a single affidavit. Further, no attempt at all was made to prove any link between attorney Weinberg and client Dr. Choi. Significantly, the instant action was marked ready for trial. Five years is indeed ample opportunity for counsel to get it right.

Id., 2 Misc 3d at 741-742.

## II.    Facts Relevant to This Motion to the Extent That it is Predicated on Rule 12(b)(6)

### A.    NY Dx's Previous Supreme Court, New York County Action

On or about March 5, 2013, Weinberg filed a lawsuit against GEICO in the Supreme Court, New York County, purportedly on behalf of NY Dx, entitled <u>New York Diagnostic Medical Care, P.C. v. GEICO Casualty Insurance Co.</u>, Index No. 650766/2013 (Sup. Ct. N.Y. Cty.)(the "New York County Action"). <u>See</u> Gershenoff Decl., Exhibit "F". This, despite the fact that NY Dx had no authority to commence the New York County Action because of Olmedo's death and a lack of authorization by any representative of Olmedo's estate, and despite the fact that Weinberg had no authority to represent NY Dx.

The Complaint in the New York County Action asserted two causes of action for declaratory and monetary relief, alleging that NY Dx submitted more than $800,000.00 in claims forms for MRIs purportedly provided to hundreds of GEICO insureds, and asserted – without any colorable legal authority – that GEICO improperly relied on peer reviews in denying the claims for lack of medical necessity. <u>See</u> Gershenoff Decl., Exhibit "F".

On May 17, 2013, GEICO made a motion to dismiss the complaint pursuant to N.Y. C.P.L.R. 3211(a)(7) for failure to state a cause of action.  The Honorable Justice Joan A. Madden issued a decision on April 11, 2014 in which she found NY Dx's claim to be meritless and dismissed the complaint for failure to state a cause of action. <u>See</u> Gershenoff Decl., Exhibit "F".

### B.    The Present Case

Undeterred, on August 26, 2014 Weinberg commenced the present action – again, purportedly on behalf of NY Dx – in the Supreme Court, Queens County. <u>See</u> Gershenoff Decl., Exhibit "G". GEICO removed the action to this Court on September 19, 2014.

As the Court may note, the substantive allegations in the present case – to the effect that GEICO improperly relied on peer reviews in denying claims for lack of medical necessity – are in all material respects identical to the meritless and legally defective allegations that were dismissed by Justice Madden in the New York County Action. <u>See</u> Gershenoff Decl., Exhibits "F", "G".

Moreover, the Complaint in the present case seeks to recover more than $800,000.00 in billing for MRI services that NY Dx purportedly provided to 559 of GEICO's insureds. <u>See</u> Gershenoff Decl., Exhibit "G". Of the 559 GEICO insureds in the present case, 429 appeared in NY Dx's Complaint in the New York County Action, in which NY Dx/Weinberg sought to recover for the very same GEICO insureds. <u>See</u> Gershenoff Decl., Exhibits "F", "G", and "H".

Thus, more than 76 percent of NY Dx's/Weinberg's claims in the present case are the exact same claims that were dismissed by Justice Madden in the New York County Action. <u>Id</u>.

**C.      The Related Case and NY Dx's Default in the Related Case**

On September 18, 2014, shortly before it removed the present case from the Supreme Court, Queens County to this Court, GEICO commenced its own lawsuit in this Court against NY Dx, Alta, Alta's owner, Leonid Rubin a/k/a Leonard Rubin ("Rubin"), and Eleanor Lipovsky, M.D. ("Lipovsky"), the physician who purportedly owned NY Dx prior to Olmedo. <u>See</u> <u>Government Employees Insurance Co. et al. v. New York Diagnostic Medical Care P.C. et al.</u>, E.D.N.Y. Docket No. 14-cv-5473 (SJ)(RER)(the "Related Case").

Then, on October 1, 2014, GEICO requested that the present case and the Related Case be marked related. <u>See</u> Docket No. 8; <u>see</u> <u>also</u> Related Case, Docket No. 9. On October 14, 2014, this action and the Related Case were determined to be related, and the present case was reassigned to this Court. <u>See</u> October 14, 2014 Docket Entry.

In the Related Case, GEICO alleges – among other things – that though NY Dx nominally was owned on paper by Lipovsky and then Olmedo, in actuality it is and always has been secretly and unlawfully owned and controlled by Rubin, Alta, and their associates, who are not licensed as physicians. <u>See</u> Related Case, Docket No. 1, <u>passim</u>. GEICO therefore alleges that each and every bill submitted by or on behalf of NY Dx for no-fault insurance benefits fraudulently misrepresented NY Dx's eligibility to bill for or to collect no-fault insurance benefits in the first instance. <u>Id</u>. Based on these allegations, among others, GEICO asserts claims against the Related Case Defendants for violation of the civil RICO statute, common law fraud, and unjust enrichment. <u>Id</u>. Notably, in the Related Case GEICO also seeks a declaratory judgment to the effect that NY Dx is not eligible to collect on any of its pending and unpaid billing because – among other things – it was fraudulently incorporated and secretly and unlawfully is owned and controlled by unlicensed non-physicians. <u>Id</u>.

In this context, it is important to note that – in the Related Case – GEICO recounts, at some length, the machinations through which Rubin, Alta, and their associates secretly and unlawfully have owned and controlled NY Dx in contravention of New York law. <u>See</u> Related Case, Docket No. 1, <u>passim</u>.

What is more, GEICO pleads considerable facts in the Related Case which suggest that Weinberg has purported to represent NY Dx in no-fault insurance collections litigation despite: (i) his actual knowledge that NY Dx was fraudulently incorporated and ineligible to collect no-fault insurance benefits; (ii) his actual knowledge that he had no authority to represent NY Dx, at least since Olmedo died in April 2010. <u>See</u> Related Case, Docket No. 1, ¶¶ 95-114, 144-152.

As noted above, Weinberg purported to commence the present action in the Supreme Court, Queens County on August 26, 2014, <u>before</u> GEICO commenced the Related Case on

September 18, 2014. Unsurprisingly, given GEICO's detailed allegations in the Related Case, neither Weinberg nor any other attorney dared to appear on behalf of NY Dx in the Related Case. As a result, NY Dx defaulted in the Related Case, and GEICO has moved for default judgment against NY Dx on its claim for a declaratory judgment to the effect that NY Dx is not eligible to collect on any of its pending billing. The motion currently is pending. See Related Case, Docket No. 20.

Notably, if the Court grants GEICO's motion for default judgment in the Related Case, and issues the requested declaratory judgment, NY Dx's claims in the present case will be subject to immediate dismissal.

**D.    The Settlement and Release Agreement With Olmedo's Estate and NY Dx**

In keeping with the fact that neither Christen Olmedo, the Administrator of Olmedo's estate, nor anyone else with authority over Olmedo's estate, ever authorized Weinberg to represent NY Dx or to commence the present action, on November 13, 2014 NY Dx and Olmedo's estate entered into a Settlement and Release Agreement releasing all of the claims that Weinberg purports to assert on behalf of NY Dx in this action. See Gershenoff Decl., Exhibit "D".

Among other things, pursuant to the Settlement and Release Agreement, NY Dx has consented to the entry of an Order and Permanent Injunction in the Related Case specifying that: (i) until recently Christen Olmedo, as Administrator of Olmedo's estate, was completely unaware that Olmedo was listed as the owner of NY Dx; (ii) Christen Olmedo never authorized Weinberg, who is purporting to represent NY Dx in this action, to represent NY Dx in this action or in any of the other lawsuits that Weinberg has purported to file on behalf of NY Dx; and (iii) NY Dx has no right to receive payment for any bills submitted to GEICO – including the bills that are

the subject of this action – because, among other things, it was fraudulently incorporated, secretly and unlawfully owned and controlled by non-physicians, and illegally split fees with non-physicians. See Gershenoff Decl., Exhibit "D".

## ARGUMENT

### I.    The Standards on This Motion

#### A.    The Standards on a Motion Pursuant to Rule 12(b)(1)

Standing challenges most appropriately are brought pursuant to Fed. R. Civ. P. 12(b)(1). See, e.g., Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 fn. 6 (2d Cir. 2006).

Where, as here, "[a] court [is] presented with a motion to dismiss under both [Federal Rule of Civil Procedure] 12(b)(1) and 12(b)(6)[, it] must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 701 F. Supp. 2d 568, 580 (S.D.N.Y. 2010)(internal quotations and citation omitted).

When deciding a jurisdictional motion pursuant to Rule 12(b)(1), the Court may look beyond the allegations of the pleadings and "examine evidence outside of the pleadings." Hamm v. U.S., 483 F.3d 135, 137 (2d Cir. 2007). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. Id.

#### B.    The Standards on a Motion Pursuant to Rule 12(b)(6)

The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000)(internal quotations omitted). Res judicata challenges may properly be raised via a motion to dismiss for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994).

The purpose of res judicata is to "protect[] litigants from the burden of relitigating an identical issue with the same party or his privy and  … promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979); see also Arizona v. California, 530 U.S. 392, 412 (2000) ("[res judicata] is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.")(internal quotations omitted).

"To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan, 214 F.3d. at 285.

## II.    NY Dx Lacks Standing to Prosecute This Action

As a threshold matter, NY Dx lacks standing to prosecute this action, because Olmedo's death divested it of standing to prosecute any lawsuits unless and until they were authorized by someone with authority over Olmedo's estate, which has not occurred. See Gershenoff Decl., Exhibit "D".

Multiple New York Courts have held that, upon the death of the sole shareholder of a professional corporation, the professional corporation is powerless to pursue collection of any outstanding claims until such time as someone with authority over the sole shareholder's estate authorizes it to do so.

For instance, in Ocean Diagnostic Imaging, P.C. v. Merchants Mut. Ins. Co., 15 Misc. 3d 9, 10 (A.T. 2d Dep't 2007), a professional corporation's motion for summary judgment against

an insurer was pending when the professional corporation's sole shareholder, a physician named Zinn, died. Thereafter, the professional corporation's motion was denied "on the ground that the 'court has no jurisdiction' due to" the shareholder's death. Id. Then, a substitution of counsel form was executed, purportedly on behalf of the professional corporation, and successor counsel filed an appeal, also purportedly on behalf of the professional corporation. Id. On appeal, the successor counsel – supposedly on behalf of the professional corporation – contended that the shareholder's death did not divest the Court of jurisdiction because the professional corporation "was a separate legal entity" from the shareholder. Id. However, the New York Appellate Term dismissed the appeal, ruling that "upon the death of Zinn, plaintiff continued to exist (see e.g. Business Corporation Law § 1510), but, for all practical purposes, it was powerless to proceed with this action. There was no one with the authority to, inter alia, execute the substitution of counsel, retain new counsel, or authorize the filing of the notice of appeal and the prosecution of the appeal. Upon his death, Zinn's shares in plaintiff became an asset of his estate and this record does not establish that any of the actions involved herein were authorized by someone with the authority to do so … ."

Along similar lines, in Ocean Diagnostic Imaging, P.C. v Chubb Indem. Ins. Co., 36 Misc. 3d 140(A) (A.T. 2d Dep't 2012), the New York Appellate Term reversed a trial Court's denial of an insurer's motion to dismiss a complaint purportedly brought in the name of a professional corporation. As the Appellate Term ruled, "In this action by a provider to recover assigned first-party no-fault benefits, the record establishes that Stephen A. Zinn, M.D., who was the sole officer, director and shareholder of plaintiff, died prior to the commencement of the action … . As the record does not demonstrate that the commencement of this action was authorized by someone with the authority to do so (see Business Corporation Law §§ 1507,

1511; see also Matter of Leonard, 199 Misc. 138, 100 N.Y.S.2d 105 [1950], affd 278 A.D. 668, 103 N.Y.S.2d 136 [1951]; Ocean Diagnostic Imaging, P.C., 15 Misc 3d 9, 832 N.Y.S.2d 383; 38 NY Jur 2d, Decedents' Estates §§ 53, 1510, 1513, 1521, 1532), the order of the Civil Court is reversed and the branch of defendant's motion seeking to dismiss the complaint is granted … ."

See also Eastern Star Acupuncture, P.C. v Allstate Ins. Co., 36 Misc. 3d 41 (A.T. 2d Dep't 2012)("'[A] corporation can act only through its officers and agents' (14A NY Jur 2d, Business Relationships § 627; see also 14A NY Jur 2d, Business Relationships § 614). Upon Dr. Collins' death, Painless Medical, P.C. continued to exist (see Business Corporation Law § 1510), but was powerless to continue prosecuting its claims in this action until there was someone with authority who could authorize proceeding with this litigation … ."); Ocean Diagnostic Imaging, P.C. v. Progressive Cas. Ins. Co., 14 Misc. 3d 136(A) (A.T. 2d Dep't 2007)(dismissing appeal from order denying motion for summary judgment "on the ground that the court lacked jurisdiction due to the death of plaintiff's sole officer, director and shareholder.")

Accordingly, all of NY Dx's claims in this action should be dismissed for lack of standing.

### III.     NY Dx's Claims in This Action Should be Dismissed Pursuant to the Settlement and Release Agreement Between GEICO and NY Dx

As discussed above, on November 13, 2014 NY Dx and Christen Olmedo, as Administrator of Olmedo's estate, entered into a Settlement and Release Agreement with GEICO. See Gershenoff Decl., Exhibit "D". Pursuant to the Settlement and Release Agreement, NY Dx released GEICO from:

> any and all legal, equitable, administrative and/or other claims, counterclaims, demands, setoffs, defenses, accounts, suits, debts, dues, actions, causes of action, proceedings, arbitrations, damages, executions, awards, judgments, findings, controversies and disputes, whether known or unknown or suspected or unsuspected, which against GEICO, the Olmedo Estate and/or NY Dx ever had, now have or hereafter can, shall or

may have for, upon, or by reason of any matter, cause or thing whatsoever, whether known or unknown, suspected or unsuspected, from the beginning of the word through and including the execution of this Agreement.

See Gershenoff Decl. Exhibit "D".

Moreover, pursuant to the Settlement and Release Agreement, NY Dx and Christen Olmedo, as Administrator of Olmedo's estate, consented to the entry of an Order and Permanent Injunction in the Related Case specifying that: (i) until recently Christen Olmedo, as Administrator of Olmedo's estate, was completely unaware that Olmedo was listed as the owner of NY Dx; (ii) Christen Olmedo never authorized Weinberg, who is purporting to represent NY Dx in this action, to represent NY Dx in this action or in any of the other lawsuits that Weinberg has purported to file on behalf of NY Dx; and (iii) NY Dx has no right to receive payment for any bills submitted to GEICO – including the bills that are the subject of this action – because, among other things, it was fraudulently incorporated, secretly and unlawfully owned and controlled by non-physicians, and illegally split fees with non-physicians. See Gershenoff Decl., Exhibit "D".

In this context, the defense that a claim is barred by a contractual release may be asserted on a Rule 12(b)(6) motion, and where the language of the release is unambiguous, dismissal is proper. See, e.g., Tromp v. City of New York, 465 F. App'x 50, 52-53 (2d Cir. 2012) (affirming Rule 12(b)(6) dismissal based on unambiguous language of general release); Chepilko v. City of New York, 2012 U.S. Dist. LEXIS 94636 at * 2 - * 4 (E.D.N.Y. 2012) (dismissing case under Rule 12(b)(6) after finding claims barred by unambiguous general release). Considering the clear and unambiguous language of the Settlement and Release Agreement, this action should be dismissed.

## IV. NY Dx's Claims in This Action are Barred by Res Judicata

Even assuming, for argument's sake, that NY Dx's claims in this action are not barred by its lack of standing, or by the Settlement and Release Agreement, they are barred by <u>res judicata</u>. As the Court may note, the claims in this action are predicated on the notion that GEICO improperly relied on peer reviews in denying claims for lack of medical necessity with respect to 559 GEICO insureds supposedly treated by NY Dx. However, and as discussed above, NY Dx – or, more accurately, Weinberg – asserted substantively identical claims in the previous New York County Action, which was dismissed as meritless by Justice Madden. <u>See</u> Gershenoff Decl., Exhibit "F". What is more, of the 559 GEICO insureds whose treatment is at issue in the present case, 429 appeared in NY Dx's Complaint in the New York County Action, in which NY Dx/Weinberg sought to recover for the very same GEICO insureds. <u>See</u> Gershenoff Decl., Exhibits "F", "G", and "H".

Thus, more than 76 percent of NY Dx's/Weinberg's claims in the present case are the exact same claims that were dismissed by Justice Madden in the New York County Action. <u>Id</u>.

New York has adopted a transactional analysis approach to res judicata. <u>O'Brien v. Syracuse</u>, 54 N.Y.2d 353, 357 (N.Y. 1981) (citing <u>Matter of Reilly v. Reid</u>, 45 N.Y.2d. 24, (N.Y. 1978)). Under this approach, once a claim is brought to a final conclusion, all other claims "arising out of the same transaction or series of transactions" are barred, even if based upon different legal theories, or seeking different relief. <u>Id</u>. This rule "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." <u>In re Hunter</u>, 4 N.Y.3d 260, 291 (N.Y. 2005); <u>see also</u> <u>Perez v. Danbury Hospital</u>, 347 F.3d 419, 426 (2d Cir. 2003) (<u>res judicata</u> precludes parties from litigating issues that were or could have been raised in a prior proceeding).

In the present case, NY Dx – or, more accurately, Weinberg, purporting to act on behalf of NY Dx – seeks recovery of more than $800,000.00 for MRI services that NY Dx purportedly provided to 559 of GEICO's insureds. See Docket No. 1. Of these 559 Insureds, 429 appeared in the NY Dx Complaint in the New York County Action, wherein NY Dx/Weinberg sought to recover payment for the very same MRI services. See Gershenoff Decl., Exhibits "F", "G", and "H". These claims do not merely arise out of the same transaction or series of transactions; they are the very same claims that were dismissed by Justice Madden in the prior case. Id. With respect to these claims, the res judicata analysis could not be simpler. NY Dx litigated these exact claims and lost. Res judicata must apply.

Furthermore, it is of no consequence that – in the present case – NY Dx/Weinberg seeks to recover for MRI services purportedly provided to 130 GEICO insureds whose treatment nominally was not at issue in the dismissed New York County Action. All of the MRIs at issue in the present case supposedly took place between 2008 and 2009 – i.e., several years before the New York County Action was filed. Accordingly, there is no reason why these 130 insureds should not have been included in the New York County Action Complaint, except to allow NY Dx/Weinberg multiple bites at the apple. Having twice made the decision to aggregate hundreds of no-fault claims from hundreds of insureds, NY Dx/Weinberg cannot now argue in good faith that the 130 Insureds first introduced in the present Complaint could not have been included in the New York County Action. The claims contained in both Complaints plainly arose from the same series of transactions and were based upon the same fact pattern, i.e., that New York Diagnostic provided MRI services to GEICO insureds, that GEICO conducted peer reviews of these services upon receipt of no-fault bills, and that GEICO denied these bills based upon peer review findings that the MRIs were medically unnecessary. Accordingly, res judicata should bar

not only the litigation of claims plainly litigated in the New York County Action, but also the litigation of any additional claims relating to these 130 insureds, as any such claims clearly could have and should have been brought in the prior action.

## V.     The Court Should Impose Sanctions on Weinberg Pursuant to 28 U.S.C. § 1927 and its Inherent Power

As the Court is aware, 28 U.S.C. § 1927 authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." While the standard for triggering sanctions under Rule 11 is "objective unreasonableness," Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000), to impose sanctions under Section 1927, the court must make a finding of "conduct constituting or akin to bad faith," In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000)(internal quotations and citation omitted). "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." Bowler v. U.S. Immigration & Naturalization Serv., 901 F. Supp. 597, 605 (S.D.N.Y. 1995).

Along similar lines, District Courts are authorized under their inherent power "to assess costs and attorneys' fees against either the client or his attorney where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons … ." Rubio v. City of New York, 2005 U.S. Dist. LEXIS 40163 at * 6 - * 7 (E.D.N.Y. 2005)(Johnson, J.). As with Section 1927 sanctions imposed under a court's inherent power must be predicated by a clear demonstration of bad faith. Id.

Weinberg clearly has commenced and litigated this action in bad faith. As discussed above, this is the latest in a series of lawsuits that Weinberg has purported to file and litigate against GEICO and on behalf of NY Dx since Olmedo's death in April 2010. Weinberg could not have obtained authority from Olmedo, the putative sole shareholder of NY Dx, to litigate this lawsuit or any of the other lawsuits on behalf of NY Dx because she was dead. Needless to say,

he could not have ascertained or even investigated any of the "facts" alleged in this lawsuit or any of the others, because Olmedo – his only legitimate interlocutor on those issues – was dead. He did not obtain authority from Olmedo's estate to commence or litigate this lawsuit, or any of the other lawsuits he purported to file on behalf of NY Dx. Indeed, the only person with authority over Olmedo's estate – her son and estate Administrator, Christen Olmedo – never met Weinberg and had no idea his late mother even owned NY Dx.

If Weinberg's commencement and prosecution of this action without authority more than four years after Olmedo's death was not sufficient evidence of his bad faith, the Court also may note that the present action is substantively identical to the New York County Action, which Weinberg also commenced without authority and which was dismissed as meritless by Justice Madden. Weinberg's commencement of an action that so plainly is barred by res judicata provides further evidence of his bad faith.

Moreover, the evidence strongly indicates that Weinberg expected that Olmedo would die, that her death would divest NY Dx of the ability to pursue collection on its billing, and that he therefore colluded with Rubin and Alta to continue to pursue collection on the NY Dx billing despite Olmedo's death. As discussed above, pursuant to the March 1, 2010 "Retainer Agreement" and "Agreement of Sale" – executed by Olmedo less than two months before her death:

(i)     NY Dx and Olmedo purported to retain Weinberg to pursue collection of the NY Dx accounts receivable, despite the fact that – concomitantly – they had purported to sell and assign all of the NY Dx accounts receivable to Alta.

(ii)    NY Dx and Olmedo purported to "irrevocably direct" Weinberg to deposit any money he managed to collect on the NY Dx accounts receivable into Weinberg's Trust IOLA account, and then to disburse the funds either to Alta, or to Alta's designee.

(iii)    NY Dx and Olmedo represented and warranted that, in the event that any insurance company made payment on the NY Dx accounts receivable directly to NY Dx or Olmedo, rather than to Weinberg, then the payments would be withdrawn from the NY Dx account and paid over to Weinberg.

GEICO respectfully submits that these machinations should be viewed in the context of Weinberg's long record of professional discipline, including a one-year suspension of his law license for what appears to be conduct tantamount to fraud. These machinations also should be viewed in the context of the outrageous conduct by Weinberg recounted in Park Health Ctr. v. Country-Wide Ins. Co., 2 Misc. 3d 737 (Civ. Ct. Queens Cty. 2003), supra.

At a minimum, GEICO respectfully contends that the Court should convene an evidentiary hearing, and require Weinberg to personally appear and to explain how his conduct in commencing and prosecuting this action comports with his ethical obligations and good faith.

## CONCLUSION

For the aforementioned reasons, GEICO's motion should be granted, together with such other and further relief as to the Court seems just and proper.

Dated:  November 14, 2014

RIVKIN RADLER LLP


By: _/s/ Max Gershenoff_____
        Barry I. Levy (BL 2190)
        Max Gershenoff (MG 4648)
        Michael Schnepper (MS 6953)
        Joshua D. Smith (JS 3989)
926 RXR Plaza
Uniondale, New York  11556
(516) 357-3000

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co, GEICO General Insurance Company and GEICO Casualty Co.*