UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
NEW YORK DIAGNOSTIC MEDICAL CARE P.C.,

                Plaintiff,                           Case No.: 1:14-cv-05498-SJ-RER

        -against-

GEICO CASUALTY INSURANCE CO.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS
AGAINST AMOS WEINBERG, ESQ.**


                          Respectfully submitted,

                          RIVKIN RADLER LLP
                          926 RXR Plaza
                          Uniondale, New York 11556-0926
                          RR File No.:  5100-700
                          Telephone:     (516) 357-3000
                          Facsimile:     (516) 357-3333

                          *Counsel for Defendant,*
                          *GEICO Casualty Co.*

Of Counsel:
Barry I. Levy, Esq. (BL 2190)
Max Gershenoff, Esq. (MG 4648)
Michael Schnepper (MS 6953)
Joshua D. Smith (JS 3989)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF RELEVANT FACTS ..............................................................................2

    I.     NY Dx, Eleanor Lipovsky, M.D., and Carmen Olmedo, M.D. ...................2

    II.    Weinberg's Litigation Activity, the Present Case, and the Related Case ......2

    III.   Weinberg's Professional Disciplinary History ...............................................9

    IV.   The Attorneys' Fees and Disbursements Weinberg Forced GEICO to
          Incur in Connection with This Action ...........................................................11

ARGUMENT.......................................................................................................................11

    I.     Weinberg Should Be Required to Pay the Legal Fees and Disbursements
         He Forced GEICO to Incur in Connection With this Litigation....................11

    II.    The Legal Fees and Disbursements GEICO Seeks Through This
         Motion are Reasonable ...................................................................................15

         A.    The Number of Hours GEICO's Counsel Expended on This
              Litigation Was Reasonable .............................................................16

         B.    GEICO's Counsel's Hourly Rates Were Reasonable ......................17

CONCLUSION....................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re 60 E. 80th St. Equities, Inc.,
  218 F.3d 109 (2d Cir. 2000)..................................................................................12

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,
  522 F.3d 182 (2d Cir. 2008)..................................................................................16

Bowler v. U.S. Immigration & Naturalization Serv.,
  901 F. Supp. 597 (S.D.N.Y. 1995).........................................................................12

Cordero v. Collection Co.,
  2012 U.S. Dist. LEXIS 47086 (E.D.N.Y. 2012)....................................................15

Eastern Star Acupuncture, P.C. v Allstate Ins. Co.,
  36 Misc. 3d 41 (A.T. 2d Dep't 2012) ....................................................................14

Government Employees Insurance Co. et al. v. New York Diagnostic Medical
  Care P.C. et al.,
  E.D.N.Y. Docket No. 14-cv-5473..........................................................................2

Government Employees Insurance Co. et al. v. New York Diagnostic Medical
  Care P.C. et al.,
  E.D.N.Y. Docket No. 14-cv-5473 (SJ)(RER)...........................................4, 7, 8, 17

Hugee v. Kimso Apts., LLC,
  852 F. Supp. 2d 281 (E.D.N.Y. 2012) ...................................................................19

Matter of Leonard,
  199 Misc. 138, 100 N.Y.S.2d 105 (1950)..............................................................14

Margo v. Weiss,
  213 F.3d 55 (2d Cir. 2000)....................................................................................11

Mary Jo C. v. Dinapoli,
  2014 U.S. Dist. LEXIS 175686 (E.D.N.Y. 2014)...................................................19

Millea v. Metro-North R.R. Co.,
  658 F.3d 154 (2d Cir. 2011)..................................................................................15

N.Y. State Ass'n for Retarded Children, Inc. v. Carey,
  711 F.2d 1136 (2d Cir. 1983)................................................................................16

New York Diagnostic Medical Care, P.C. v. GEICO Casualty Insurance Co.,
   Index No. 650766/2013 (Sup. Ct. N.Y. Cty.) ..........................................................1, 5, 6, 7, 15

Ocean Diagnostic Imaging, P.C. v Chubb Indem. Ins. Co.,
   36 Misc. 3d 140(A) (A.T. 2d Dep't 2012) ................................................................................13

Ocean Diagnostic Imaging, P.C. v. Merchants Mut. Ins. Co.,
   15 Misc. 3d 9 (A.T. 2d Dep't 2007) ...................................................................................13, 14

Ocean Diagnostic Imaging, P.C. v. Progressive Cas. Ins. Co.,
   14 Misc. 3d 136(A) (A.T. 2d Dep't 2007) ................................................................................14

Park Health Ctr. v. Country-Wide Ins. Co.,
   2 Misc. 3d 737 (Civ. Ct. Queens Cty. 2003) ....................................................................2, 10, 15

Perdue v. Kenny A. ex rel. Winn,
   559 U.S. 542 (2010) ..................................................................................................................15

Rubio v. City of New York,
   2005 U.S. Dist. LEXIS 40163 (E.D.N.Y. 2005) .......................................................................12

Sass v. MTA Bus Co.,
   6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ..................................................................................19

Matter of Weinberg,
   25 A.D.3d 157 (2d Dep't 2005) .............................................................................................9, 10

## PRELIMINARY STATEMENT

Defendant GEICO Casualty Co. ("GEICO" or "Defendant"), improperly sued herein as "GEICO Casualty Insurance Co.", respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 1927 and the Court's inherent power, for an order imposing sanctions on Amos Weinberg, Esq. ("Weinberg").

For several years Weinberg has purported to represent a medical professional corporation called New York Diagnostic Medical Care P.C. ("NY Dx") in various no-fault insurance collections lawsuits against GEICO and other automobile insurance companies. Most recently, Weinberg purported to represent NY Dx in the present case.

However, and as discussed more fully below, the putative owner of NY Dx – a physician named Carmen Olmedo, M.D. ("Olmedo") – died in April 2010. Olmedo's death divested NY Dx of standing to pursue collection of any of its pending billing, at least until someone with authority over Olmedo's estate, such as her estate's administrator, authorized it to do so. In this context, the administrator of Olmedo's estate – her son Christen Olmedo – never met Weinberg, much less authorized Weinberg to commence or prosecute any litigation on behalf of NY Dx, including the present case.

Not only did Weinberg commence and prosecute the present lawsuit without any authority to do so, but the claims asserted by Weinberg in this case – purportedly on behalf of NY Dx – are in large part the exact same claims that Weinberg previously purported to assert on behalf of NY Dx in a case entitled New York Diagnostic Medical Care, P.C. v. GEICO Casualty Insurance Co., Index No. 650766/2013 (Sup. Ct. N.Y. Cty.)(the "New York County Action"). In the New York County Action, the Court dismissed the claims, noting that they were meritless as a matter of law. Even so, Weinberg persisted in asserting the same claims in the present case,

without any authority to do so, solely in an attempt to vex, harass, and extract a nuisance settlement from GEICO.

What is more, this is not the first time that Weinberg has falsely purported to represent a deceased physician without any authority to do so. Weinberg did much the same thing in <u>Park Health Ctr. v. Country-Wide Ins. Co.</u>, 2 Misc. 3d 737, 741-742 (Civ. Ct. Queens Cty. 2003), leading the Court to sanction him for "sordid conduct leading to months of hearings and motions".

As set forth herein, Weinberg did not stipulate to dismiss the claims he purported to assert on behalf of NY Dx in this case until after he forced GEICO to make a motion to dismiss.[1] In the interim, he forced GEICO to incur tens of thousands of dollars in attorneys' fees and disbursements.

Accordingly, GEICO's motion should be granted, and Weinberg should be directed to reimburse GEICO for all of the attorneys' fees and disbursements it was obligated to incur as the result of his conduct.

## <u>STATEMENT OF RELEVANT FACTS</u>[2]

### I.    <u>NY Dx, Eleanor Lipovsky, M.D., and Carmen Olmedo, M.D.</u>

NY Dx was incorporated on May 9, 2008, and its initial owner of record was a physician named Eleanor Lipovsky, M.D. ("Lipovsky"). <u>See</u> Gershenoff Decl., ¶ 6. Lipovsky had a long history of professional discipline and, in September 2007, in a criminal case entitled <u>People of</u>

---

[1] In fact, Weinberg did not stipulate to dismiss the claims he purported to assert in this action until after he was named as a defendant in the related racketeering lawsuit GEICO commenced in this Court, which set forth his conduct over the past several years in a plain light. <u>See</u> Government Employees Insurance Co. et al. v. New York Diagnostic Medical Care P.C. et al., E.D.N.Y. Docket No. 14-cv-5473, at Docket No. 25.

[2] The facts set forth herein are taken from the Declaration of Max Gershenoff ("Gershenoff Decl."), submitted herewith, together with the exhibits annexed thereto.

the State of New York v. Kagan, et al. (the "Kagan Action"), a grand jury in the Supreme Court, Kings County indicted Lipovsky for a large number of crimes, including multiple counts of grand larceny, insurance fraud, and falsifying business records, in connection with a no-fault insurance fraud scheme. Id.

On January 4, 2010, Lipovsky pleaded guilty to criminal facilitation in the Kagan Action. See Gershenoff Decl., ¶ 7. It appears that, in exchange for permitting Lipovsky to plead guilty to a lesser charge of criminal facilitation, the Attorney General required – among other things – that Dr. Lipovsky agree to never again treat no-fault insurance patients, and to never again present any claims for no-fault insurance reimbursement. Id. For instance, one of Lipovsky's co-Defendants in the Kagan Action – who was charged with essentially the same conduct and crimes in the Kagan Action as Lipovsky, and who was permitted to plead guilty to the lesser charge of criminal facilitation a few months prior to Lipovsky's guilty plea – also had to agree to never again treat no-fault insurance patients, and to never again present any claims for no-fault insurance reimbursement. Id.

What is more, on December 31, 2009 – shortly before Lipovsky pleaded guilty in the Kagan Action and apparently agreed never again to present any claims for no-fault insurance reimbursement – Lipovsky sold her interests in NY Dx to Olmedo. See Gershenoff Decl., ¶ 8.

Thereafter, on March 1, 2010, Olmedo and NY Dx entered into a purported "Agreement of Sale" with an entity called Alta Enterprises, Inc. ("Alta"), whereby Alta purported to purchase NY Dx's accounts receivable. Furthermore, on or about March 1, 2010, Olmedo and NY Dx purported to enter into an irrevocable "Retainer Agreement" with Weinberg. See Gershenoff Decl., ¶ 9.

Pursuant to the "Retainer Agreement" and the "Agreement of Sale":

3

(i)     NY Dx and Olmedo purported to retain Weinberg to pursue collection of the NY Dx accounts receivable, despite the fact that – concomitantly – they had purported to sell and assign all of the NY Dx accounts receivable to Alta.

(ii)    NY Dx and Olmedo purported to "irrevocably direct" Weinberg to deposit any money he managed to collect on the NY Dx accounts receivable into Weinberg's Trust IOLA account, and then to disburse the funds either to Alta, or to Alta's designee.

(iii)   NY Dx and Olmedo represented and warranted that, in the event that any insurance company made payment on the NY Dx accounts receivable directly to NY Dx or Olmedo, rather than to Weinberg, then the payments would be withdrawn from the NY Dx account and paid over to Weinberg.

(iv)    NY Dx and Olmedo represented and warranted that they would "cooperate with Amos Weinberg [sic] collection efforts throughout such process and execute, without charge, any and all such documents as may be reasonably required in the opinion of Amos Weinberg to be executed and to appear for such depositions or such court appearances requested by Amos Weinberg." However, the "Agreement of Sale" also provided that "[a]ll reasonable efforts will be made by Amos Weinberg to eliminate such personal appearances whenever possible."

(v)     In the event that NY Dx and Olmedo failed to "cooperate fully with Amos Weinberg and or [Alta]", then they would be jointly and severally liable to Alta for its "losses", including attorneys' fees.

See Gershenoff Decl., ¶ 10.

Soon thereafter, on April 27, 2010, Olmedo died. See Gershenoff Decl., ¶ 11. Then, Olmedo's son, Christen Olmedo, was appointed the administrator of Olmedo's estate. Id. Christen Olmedo was not aware until recently that Olmedo was the owner of NY Dx, nor did Christen Olmedo – as administrator of Olmedo's estate – ever retain Weinberg or authorize Weinberg or any other law firms to commence or prosecute collections lawsuits or arbitrations in the name of NY Dx. Id.

## II.   Weinberg's Litigation Activity, the Present Case, and the Related Case

Even so, in the years since Olmedo's death, Weinberg has filed and litigated a large number of collections lawsuits against GEICO and other automobile insurers, purportedly on

4

behalf of NY Dx, despite the fact that he had no authority to do so following Olmedo's death. See Gershenoff Decl., ¶ 12. Weinberg had to know that he had no authority to commence or prosecute collections lawsuits on behalf of NY Dx, because Olmedo was NY Dx's sole owner, she was dead, and Weinberg therefore had no interlocutor at NY Dx who could authorize him to commence or prosecute collections lawsuits. Nor did Weinberg have any interlocutor with whom he could discuss the underlying facts, validity, or merit of any of the collections lawsuits he was purporting to file on behalf of NY Dx, because the sole owner of NY Dx, Olmedo, was dead.

What is more, even if there was some person at NY Dx who told Weinberg to continue pursuing collection of NY Dx's pending billing following Olmedo's death, Weinberg – an attorney – would have known that Olmedo's death divested NY Dx of the ability to pursue collection of the billing until someone with authority over Olmedo's estate, such as Christen Olmedo, the administrator, authorized it to do so. As set forth above, Christen Olmedo never retained Weinberg or authorized Weinberg or any other law firms to commence or prosecute collections lawsuits or arbitrations in the name of NY Dx. See Gershenoff Decl., ¶ 11.

The circumstances surrounding Weinberg's commencement and prosecution of the present case are particularly disturbing, and underscore the fact that Weinberg commenced this action in bad faith solely to vex and harass GEICO.

For instance, on or about March 5, 2013, Weinberg commenced the New York County Action against GEICO, purportedly on behalf of NY Dx. See Gershenoff Decl., ¶ 15. This, despite the fact that NY Dx had no authority to commence the New York County Action because of Olmedo's death and a lack of authorization by any representative of Olmedo's estate, and despite the fact that Weinberg had no authority to represent NY Dx. See Gershenoff Decl., ¶ 11.

The complaint in the New York County Action asserted two causes of action for declaratory and monetary relief, alleging that NY Dx submitted more than $800,000.00 in claims forms for MRIs purportedly provided to hundreds of GEICO insureds, and asserted – without any colorable legal authority – that GEICO improperly relied on peer reviews in denying the claims for lack of medical necessity. See Gershenoff Decl., ¶ 16.

On May 17, 2013, GEICO made a motion to dismiss the New York County Action complaint pursuant to N.Y. C.P.L.R. 3211(a)(7) for failure to state a cause of action. The Court in the New York County Action issued a decision on April 11, 2014 in which it found NY Dx's claim (actually, Weinberg's claim, which he falsely purported to assert on behalf of NY Dx) to be meritless and dismissed the complaint for failure to state a cause of action. See Gershenoff Decl., ¶ 17.

Undeterred, on August 26, 2014 Weinberg commenced the present action – again, purportedly on behalf of NY Dx – in the Supreme Court, Queens County. GEICO removed the action to this Court on September 19, 2014. See Gershenoff Decl., ¶ 18.

As the Court may note, the substantive allegations in the present case – to the effect that GEICO improperly relied on peer reviews in denying claims for lack of medical necessity – are in all material respects identical to the meritless and legally defective allegations that were dismissed by the Court in the New York County Action. See Gershenoff Decl., ¶ 19.

Moreover, the Complaint in the present case seeks to recover more than $800,000.00 in billing for MRI services that NY Dx purportedly provided to 559 of GEICO's insureds. See Gershenoff Decl., ¶ 20. Of the 559 GEICO insureds in the present case, 429 appeared in NY Dx's Complaint in the New York County Action, in which NY Dx/Weinberg sought to recover for the very same GEICO insureds. Id.

6

Thus, more than 76 percent of NY Dx's/Weinberg's claims in the present case were the exact same claims that were dismissed by the Court as meritless in the New York County Action. See Gershenoff Decl., ¶ 21.

On September 18, 2014, shortly before it removed the present case from the Supreme Court, Queens County to this Court, GEICO commenced its own lawsuit in this Court against NY Dx, Lipovsky, and others. See Government Employees Insurance Co. et al. v. New York Diagnostic Medical Care P.C. et al., E.D.N.Y. Docket No. 14-cv-5473 (SJ)(RER)(the "Related Case"). GEICO later amended its complaint in the Related Case to assert RICO conspiracy, aiding and abetting fraud, N.Y. Judiciary Law § 487, and unjust enrichment claims against Weinberg, as well. See Gershenoff Decl., ¶ 22..

In the Related Case, GEICO pleads considerable facts to demonstrate that, though NY Dx nominally was owned on paper by Lipovsky and, later, Olmedo, in actuality it secretly and unlawfully has been owned and controlled by unlicensed non-physicians. See Gershenoff Decl., ¶ 23. Moreover, in the Related Case, GEICO pleads considerable facts to demonstrate that Weinberg has purported to represent NY Dx in no-fault insurance collections litigation despite: (i) his actual knowledge that NY Dx was fraudulently incorporated and ineligible to collect no-fault insurance benefits; (ii) his actual knowledge that he had no authority to represent NY Dx, at least since Olmedo died in April 2010. Id.

As noted above, Weinberg purported to commence the present action in the Supreme Court, Queens County on August 26, 2014, before GEICO commenced the Related Case on September 18, 2014. Unsurprisingly, given GEICO's detailed allegations in the Related Case, neither Weinberg nor any other attorney dared to appear on behalf of NY Dx in the Related Case. See Gershenoff Decl., ¶ 24.

In keeping with the fact that neither Christen Olmedo, the administrator of Olmedo's estate, nor anyone else with authority over Olmedo's estate, ever authorized Weinberg to represent NY Dx or to commence the present action, on November 13, 2014 NY Dx and Olmedo's estate entered into a Settlement and Release Agreement releasing all of the claims that Weinberg falsely purported to assert on behalf of NY Dx in this action. See Gershenoff Decl., ¶ 25.

Among other things, pursuant to the Settlement and Release Agreement, NY Dx and Christen Olmedo consented to the entry of an Order and Permanent Injunction in the Related Case specifying that: (i) until recently Christen Olmedo, as Administrator of Olmedo's estate, was completely unaware that Olmedo was listed as the owner of NY Dx; (ii) Christen Olmedo never authorized Weinberg, who purported to represent NY Dx in this action, to represent NY Dx in this action or in any of the other lawsuits that Weinberg purported to file on behalf of NY Dx; and (iii) NY Dx has no right to receive payment for any bills submitted to GEICO – including the bills that are the subject of this action – because, among other things, it was fraudulently incorporated, secretly and unlawfully owned and controlled by non-physicians, and illegally split fees with non-physicians. See Gershenoff Decl., ¶ 26.

Ultimately, on January 5, 2015 – after forcing GEICO to expend considerable time and resources in connection with this action, including the expense of a motion to dismiss – Weinberg stipulated to the dismissal of the claims he purported to assert on behalf of NY Dx in this action, with prejudice. See Gershenoff Decl., ¶ 27. Notably, Weinberg only agreed to dismiss this action in early January after GEICO repeatedly directed the Court's attention to the fact that he was purporting to represent NY Dx in this case without any authority to do so. Id.

8

### III.   <u>Weinberg's Professional Disciplinary History</u>

Weinberg's conduct in the present case should be viewed in the context of his long professional disciplinary history. For instance, on April 18, 1997, the Grievance Committee for the Tenth Judicial District (the "Grievance Committee") issued a letter of caution to Weinberg for failing to provide one of his clients with the written retainer required by all attorneys retained in a contingent fee matter and for settling a collection matter without the permission of his client. <u>See</u> <u>Matter of Weinberg</u>, 25 A.D.3d 157 (2d Dep't 2005). The Grievance Committee noted that only the relatively low dollar amount of the settlement avoided the issuance of a more severe sanction. <u>Id</u>.

On June 20, 1997, the Grievance Committee issued a second letter of caution to Weinberg for failing to provide his client with a retainer agreement as required in a contingent fee arrangement. <u>See</u> <u>Weinberg</u>, <u>supra</u>.

On June 30, 2000, the Grievance Committee issued yet another letter of caution to Weinberg, this time for communicating with a represented party despite clear instructions to cease such communication, in violation of Code of Professional Responsibility DR 7-104(a)(1) (22 NYCRR 1200.35(a)(1)). <u>See</u> <u>Weinberg</u>, <u>supra</u>.

On September 18, 2001, the Grievance Committee issued a letter of admonishment to Weinberg, based on his failure to advise a putative debtor that there was no valid debt and, therefore, no merit to certain litigation Weinberg had threatened. <u>See</u> <u>Weinberg</u>, <u>supra</u>.

Then, in a decision and order dated October 31, 2005, the Appellate Division, Second Department suspended Weinberg's license to practice law for one year. <u>See</u> <u>Weinberg</u>, <u>supra</u>. The Appellate Division's decision was based on its determination that Weinberg had:

(i)   neglected various legal matters entrusted to him, in violation of Code of Professional Responsibility DR 6-101(a)(3) (22 NYCRR 1200.30(a)(3));

(ii)     engaged in conduct adversely reflecting on his fitness as a lawyer by – among other things – permitting one of his employees, who was not licensed as an attorney, to hold herself out as an attorney during the course of her employment with him; and

(iii)    failed to properly preserve funds entrusted to him in escrow, in violation of Code of Professional Responsibility DR 9-102 (a)(22 NYCRR 1200.469a)).

See Weinberg, supra.

Weinberg's conduct in the present case also should be viewed in the context of his history of purporting to represent physicians without authority to do so. For instance, in Park Health Ctr. v. Country-Wide Ins. Co., 2 Misc. 3d 737 (Civ. Ct. Queens Cty. 2003), Weinberg purported to commence a no-fault insurance collections action on behalf of eight plaintiff healthcare providers. The insurer then presented evidence that various of the providers – including one who, much like Olmedo in the present case, was deceased – never authorized Weinberg to represent them. Id., 2 Misc. 3d at 738-741. In its order sanctioning Weinberg, the Court observed that:

> the court first addresses the improprieties of the officer of the court and his sordid conduct leading to months of hearings and motions. It is this relationship that lays at the heart of Mr. Weinberg's sanctionable conduct. He abdicated his responsibility as an officer of the court, and in so doing permitted a number of meritless and baseless actions to go forward, forcing both defendant and the court to expend enormous energy, time and resources. He admitted that he never signed any of the documents that came before the court bearing his signature, including verifications and affirmations. … Weinberg abdicated his responsibility … by never confirming any of the "facts" or "clients." He never once spoke with his "clients" to verify the claim or the very existence of either the clients or the claim.
>
> This failure to adequately represent his "clients" is made clear by the evidence that Mr. Weinberg was unaware that his "client" Dr. Koven was deceased. While it is still questionable whether Dr. Koven ever retained Mr. Weinberg independently or through Dr. Abraham, the fact that Dr. Koven's bankruptcy and subsequent death went undetected by Mr. Weinberg for a significant period of time indicates his dereliction of legal duty. Further, after the initial conference before this court when the truth about the deceased Dr. Koven was "discovered," Mr. Weinberg nevertheless entered judgment on Dr. Koven's behalf in another matter.

10

Had Mr. Weinberg or his employees taken the time to review the documents or interview the purported clients at the inception of the action or at any time during the next five years, the enormous effort of both defendant and the court would not have been expended. Instead, defendant was forced to locate and investigate the "plaintiffs" in this matter and through such labor discovered two plaintiffs had never heard of Mr. Weinberg and did not authorize him to represent them in this matter. None of the underlying documents supported any cause of action on behalf of Park Health and a simple review of the documents furnished would have eliminated that plaintiff without extensive discovery and motion practice undertaken by defendant.

When given the opportunity to come before this court to explain the apparent lack of merit and inconsistencies exposed by defendant, Mr. Weinberg flouted the authority of the court by failing to appear. Instead, Mr. Weinberg only appeared before the court once a contempt order was issued against him. … Upon appearing in court, Mr. Weinberg failed to present even a scintilla of evidence to prove his authority to act on behalf of the "plaintiffs." Mr. Weinberg did not produce even one document in admissible form, nor introduce a single affidavit. Further, no attempt at all was made to prove any link between attorney Weinberg and client Dr. Choi. Significantly, the instant action was marked ready for trial. Five years is indeed ample opportunity for counsel to get it right.

Id., 2 Misc 3d at 741-742.

## IV.   The Attorneys' Fees and Disbursements Weinberg Forced GEICO to Incur in Connection with This Action

As noted above, Weinberg's commencement and prosecution of this action without any authority to do so has forced GEICO to incur thousands of dollars in attorneys' fees and disbursements. See Gershenoff Decl., ¶ 34.

As set forth in the billing statements annexed to the accompanying Declaration of Max Gershenoff, these costs and disbursements amounted to $23,612.50. See Gershenoff Decl., ¶ 34.

## ARGUMENT

## I.   Weinberg Should Be Required to Pay the Legal Fees and Disbursements He Forced GEICO to Incur in Connection With this Litigation

28 U.S.C. § 1927 authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." While the standard for triggering sanctions under Rule 11 is "objective unreasonableness," Margo v. Weiss, 213 F.3d 55, 65 (2d

Cir. 2000), to impose sanctions under Section 1927, the court must make a finding of "conduct constituting or akin to bad faith," In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000)(internal quotations and citation omitted). "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." Bowler v. U.S. Immigration & Naturalization Serv., 901 F. Supp. 597, 605 (S.D.N.Y. 1995).

Along similar lines, District Courts are authorized under their inherent power "to assess costs and attorneys' fees against either the client or his attorney where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons … ." Rubio v. City of New York, 2005 U.S. Dist. LEXIS 40163 at * 6 - * 7 (E.D.N.Y. 2005)(Johnson, J.). As with Section 1927 sanctions imposed under a court's inherent power must be predicated by a clear demonstration of bad faith. Id.

Weinberg clearly has commenced and litigated this action in bad faith. As discussed above, this is the latest in a series of lawsuits that Weinberg has purported to file and litigate against GEICO and on behalf of NY Dx since Olmedo's death in April 2010. Weinberg could not have obtained authority from Olmedo, the putative sole shareholder of NY Dx, to litigate this lawsuit or any of the other lawsuits on behalf of NY Dx because she was dead. Needless to say, he could not have ascertained or even investigated any of the "facts" alleged in this lawsuit or any of the others, because Olmedo – his only legitimate interlocutor on those issues – was dead. He did not obtain authority from Olmedo's estate to commence or litigate this lawsuit, or any of the other lawsuits he purported to file on behalf of NY Dx. Indeed, the only person with authority over Olmedo's estate – her son and estate administrator, Christen Olmedo – never met Weinberg and had no idea his late mother even owned NY Dx.

In this context, it is important to note that multiple New York Courts have held that, upon the death of the sole shareholder of a professional corporation, the professional corporation is powerless to pursue collection of any outstanding claims until such time as someone with authority over the sole shareholder's estate authorizes it to do so. For instance, in <u>Ocean Diagnostic Imaging, P.C. v. Merchants Mut. Ins. Co.</u>, 15 Misc. 3d 9, 10 (A.T. 2d Dep't 2007), a professional corporation's motion for summary judgment against an insurer was pending when the professional corporation's sole shareholder, a physician named Zinn, died. Thereafter, the professional corporation's motion was denied "on the ground that the 'court has no jurisdiction' due to" the shareholder's death. <u>Id</u>. Then, a substitution of counsel form was executed, purportedly on behalf of the professional corporation, and successor counsel filed an appeal, also purportedly on behalf of the professional corporation. <u>Id</u>. On appeal, the successor counsel – supposedly on behalf of the professional corporation – contended that the shareholder's death did not divest the Court of jurisdiction because the professional corporation "was a separate legal entity" from the shareholder. <u>Id</u>. However, the New York Appellate Term dismissed the appeal, ruling that "upon the death of Zinn, plaintiff continued to exist (<u>see</u> <u>e.g.</u> Business Corporation Law § 1510), but, for all practical purposes, it was powerless to proceed with this action. There was no one with the authority to, inter alia, execute the substitution of counsel, retain new counsel, or authorize the filing of the notice of appeal and the prosecution of the appeal. Upon his death, Zinn's shares in plaintiff became an asset of his estate and this record does not establish that any of the actions involved herein were authorized by someone with the authority to do so … ."

Along similar lines, in <u>Ocean Diagnostic Imaging, P.C. v Chubb Indem. Ins. Co.</u>, 36 Misc. 3d 140(A) (A.T. 2d Dep't 2012), the New York Appellate Term reversed a trial Court's

denial of an insurer's motion to dismiss a complaint purportedly brought in the name of a professional corporation. As the Appellate Term ruled, "In this action by a provider to recover assigned first-party no-fault benefits, the record establishes that Stephen A. Zinn, M.D., who was the sole officer, director and shareholder of plaintiff, died prior to the commencement of the action … . As the record does not demonstrate that the commencement of this action was authorized by someone with the authority to do so (see Business Corporation Law §§ 1507, 1511; see also Matter of Leonard, 199 Misc. 138, 100 N.Y.S.2d 105 [1950], affd 278 A.D. 668, 103 N.Y.S.2d 136 [1951]; Ocean Diagnostic Imaging, P.C., 15 Misc 3d 9, 832 N.Y.S.2d 383; 38 NY Jur 2d, Decedents' Estates §§ 53, 1510, 1513, 1521, 1532), the order of the Civil Court is reversed and the branch of defendant's motion seeking to dismiss the complaint is granted … ." See also Eastern Star Acupuncture, P.C. v Allstate Ins. Co., 36 Misc. 3d 41 (A.T. 2d Dep't 2012)("Upon Dr. Collins' death, Painless Medical, P.C. continued to exist (see Business Corporation Law § 1510), but was powerless to continue prosecuting its claims in this action until there was someone with authority who could authorize proceeding with this litigation … ."); Ocean Diagnostic Imaging, P.C. v. Progressive Cas. Ins. Co., 14 Misc. 3d 136(A) (A.T. 2d Dep't 2007)(dismissing appeal from order denying motion for summary judgment "on the ground that the court lacked jurisdiction due to the death of plaintiff's sole officer, director and shareholder.")

Of course, in the present case, the record establishes that – following Olmedo's death – no one with authority over her estate ever authorized Weinberg to commence and prosecute this case or the many other cases he has purported to file on behalf of NY Dx against GEICO and other automobile insurers. To the contrary, the only person with authority over Olmedo's estate –

her son and estate administrator, Christen Olmedo – never met Weinberg and never authorized him to take any action on behalf of NY Dx.

If Weinberg's commencement and prosecution of this action (and many others) without authority more than four years after Olmedo's death was not sufficient evidence of his bad faith, the Court also may note that the present action is substantively identical to the New York County Action, which Weinberg also commenced without authority and which was dismissed as meritless by the Court. Weinberg's commencement of an action that so plainly is duplicative of the dismissed New York County Action provides further evidence of his bad faith.

GEICO respectfully submits that these machinations should be viewed in the context of Weinberg's long record of professional discipline, including a one-year suspension of his law license for what appears to be conduct tantamount to fraud. These machinations also should be viewed in the context of the outrageous conduct by Weinberg recounted in Park Health Ctr. v. Country-Wide Ins. Co., 2 Misc. 3d 737 (Civ. Ct. Queens Cty. 2003), supra.

Accordingly, Weinberg should be required to reimburse GEICO for the legal fees and disbursements he obligated GEICO to incur in connection with his bad faith in this litigation.

## II.    The Legal Fees and Disbursements GEICO Seeks Through This Motion are Reasonable

In this context, the legal fees and disbursements GEICO seeks through this motion are reasonable. As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). There is a "strong presumption" that the lodestar represents the appropriate award. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546 (2010). The party seeking fees "must provide the [c]ourt with sufficient information to determine if the fee assessed is reasonable."

15

Cordero v. Collection Co., 2012 U.S. Dist. LEXIS 47086 at *3 (E.D.N.Y. 2012). To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). In determining whether an attorney's requested hourly rate is reasonable, the court should consider what "a reasonable, paying client would be willing to pay," which varies by practice area and location. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184, 192 (2d Cir. 2008).

**A.    The Number of Hours GEICO's Counsel Expended on This Litigation Was Reasonable**

In this context, the number of hours that GEICO's attorneys were forced to expend in addressing this specious litigation was reasonable. As set forth in the contemporaneous time records submitted in support of this motion, the time spent breaks down as follows:

(i)      Partners – 44.4 hours;

(ii)     Associates – 31.8 hours; and

(iii)    Paralegals – 2.8 hours.

See Gershenoff Decl., ¶ 35.

The reasonableness of these hours should be viewed in the context of the extensive work that had to be performed. In particular, and as set forth in the contemporaneous time records submitted in support of this motion, GEICO's counsel were obligated to, among other things:

(i)      review and analyze the Complaint that Weinberg filed in this case, as well as the other materials that were filed in this case;

(ii)     conduct factual and legal research, and develop a litigation strategy with respect to this case;

16

(iii)     repeatedly liaise with GEICO, with Weinberg, and with counsel for Olmedo's estate regarding this case;

(iv)     prepare and file the requisite paperwork to remove this case to this Court;

(v)     negotiate and prepare a settlement agreement with Olmedo's estate;

(vi)     prepare a motion to stay the present case pending a decision on GEICO's motion for default judgment against NY Dx in the Related Case;

(vii)     prepare a motion to dismiss the present case;

(viii)     prepare for and appear for a status conference/hearing on GEICO's motion to stay the present case and Weinberg's authority to represent NY Dx in the first instance; and

(ix)     review, analyze, and prepare opposition to Weinberg's motion – purportedly filed on behalf of NY Dx – for an extension of time in which to respond to GEICO's motion to dismiss the present case.

See Gershenoff Decl., ¶ 36.

GEICO respectfully submits that 76.2 hours of attorney time is not unreasonable in the context of these tasks, especially considering that: (i) this was an $810,000.00 case; and (ii) the performance of these tasks generated a favorable result for GEICO, inasmuch as – ultimately – Weinberg was forced to dismiss the specious claims he purported to bring on behalf of NY Dx, with prejudice. See Gershenoff Decl., ¶ 37.

**B.     GEICO's Counsel's Hourly Rates Were Reasonable**

As set forth in the contemporaneous time records submitted in support of this motion, the attorneys who worked on this case – and their hourly rates – were as follows:

(i)     Barry Levy, Esq. – Partner - $350.00 per hour;

(ii)     Max Gershenoff, Esq. – Partner - $325.00 per hour;

(iii)     Michael Schnepper, Esq. – Associate - $250.00 per hour; and

(iv)     Joshua Smith, Esq. – Associate - $250.00 per hour.

17

See Gershenoff Decl., ¶ 38.

Mr. Levy was admitted to practice law in New York in 1992, and since that time he has litigated hundreds of complex commercial and insurance fraud cases. See Gershenoff Decl., ¶ 39. He has been counsel of record in at least 180 cases in the Eastern District of New York – including very many cases involving, like the present case, various types of no-fault insurance fraud, and numerous cases before this Court – as well as many others in the Second Circuit, the Southern District of New York, and in the District of New Jersey, among other places. Id. His articles on insurance law have appeared in the New York Law Journal, among other places, and he has spoken at the New York Anti-Car Theft and Fraud Association Annual State Education Conference, the IFM Insurance Fraud Management Conference, the New York State Chapter of Special Investigation Units, and the Coalition Against Insurance Fraud. Id.

Mr. Gershenoff was admitted to practice law in New York in 2007, and since that time he has litigated dozens of complex commercial and insurance fraud cases. See Gershenoff Decl., ¶ 40. He has been counsel of record in at least 67 cases in the Eastern District of New York – the vast majority of which, like the present case, involved various types of no-fault insurance fraud – as well as many others in the Southern District of New York and in the District of New Jersey, among other places. Id. He has published articles on insurance fraud issues in the Financial Fraud Law Report and in For the Defense, and has spoken on insurance fraud and other issues before the New Jersey Bar Association and the Commercial Lawyers Conference of New York. Id.

Mr. Schnepper was admitted to practice law in New York in 2008, and since that time he has litigated two cases before this Court, as well as over 100 other no-fault insurance cases and

arbitral proceedings in various New York State Courts and arbitral fora. <u>See</u> Gershenoff Decl., ¶ 41.

Mr. Smith was admitted to practice law in New York in 2008, and since that time he has litigated a dozen cases before this Court. In addition, Mr. Smith has served as counsel in dozens of no-fault insurance, property insurance, and other cases in various New York State Courts and arbitral fora. <u>See</u> Gershenoff Decl., ¶ 42.

In this context, GEICO's counsel's hourly rates clearly were reasonable. <u>See</u>, <u>e.g.</u>, <u>Mary Jo C. v. Dinapoli</u>, 2014 U.S. Dist. LEXIS 175686 at * 13 (E.D.N.Y. 2014)(noting that "[r]ecent prevailing hourly rates for attorneys practicing in the Eastern District of New York are … between three hundred to four hundred fifty dollars ($300.00-$450.00) for partners in large law firms and attorneys with extensive litigation experience or significant experience in the particular area of law at issue … ."); <u>Sass v. MTA Bus Co.</u>, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) (finding that "[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners … .")(Internal quotations and citation omitted); <u>Hugee v. Kimso Apts., LLC</u>, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012)(noting that "[r]ecent opinions from the Eastern District of New York have determined that reasonable hourly rates in this district are approximately … $200-$300 per hour for senior associates … .")(Internal quotations and citation omitted).

<u>CONCLUSION</u>

For the aforementioned reasons, GEICO's motion should be granted, together with such other and further relief as to the Court seems just and proper.

19

Dated:  February 12, 2015

RIVKIN RADLER LLP


By:  _/s/ Max Gershenoff_____

       Barry I. Levy (BL 2190)
       Max Gershenoff (MG 4648)
       Michael Schnepper (MS 6953)
       Joshua D. Smith (JS 3989)
926 RXR Plaza
Uniondale, New York  11556
(516) 357-3000

*Counsel for Defendant GEICO Casualty Co.*

20